JS-6
O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK GALE,<br><br>Plaintiff,<br><br>v.<br><br>EIX SEVERANCE PLAN FOR NONREPRESENTED EMPLOYEES and CALIFORNIA EDISON COMPANY BENEFITS COMMITTEE,<br><br>Defendants. | CASE NO.: SACV 14-00044-JLS (ANx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

This action is brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by plaintiff Mark Gale against defendants EIX Severance Plan for Nonrepresented Employees (the "Plan") and California Edison Company Benefits Committee (the "Committee"). The Plan is an unfunded employee welfare benefit plan governed by ERISA. The Committee is the Plan's administrator. The Plan's sponsor is the Southern California Edison Company ("SCE"), Plaintiff's

former employer. Plaintiff alleges that Defendants abused their discretion in denying him severance benefits under the Plan.

Defendants have moved for summary judgment seeking to dismiss Plaintiff's declaratory judgment action wherein Plaintiff claims he is entitled to Plan benefits under 29 U.S.C. § 1132(a)(1)(B). (Motion, Doc. 21.) Plaintiff has opposed the Motion (Opp., Doc. 26) and Defendants have replied. (Reply, Doc. 28.) Having reviewed the papers and supporting documentation submitted by the parties, and taken the matter under submission, Defendants' decision denying severance benefits to Plaintiff is AFFIRMED.

## I. BACKGROUND[1]

### A. The Severance Program

SCE operates the San Onofre Nuclear Generating Station ("SONGS"), where Plaintiff previously worked. (DRSUF ¶ 1.) The SONGS 2012 Employee Requested Severance Program ("SERSP") provided severance benefits to eligible employees who were accepted for participation. (*See id.* ¶ 2.) SERSP was offered in the sole discretion of SCE, which administered the

---

[1] The following undisputed facts were taken from Defendants' Reply Statement of Uncontroverted Facts in Support of Motion for Summary Judgment ("DRSUF," Doc. 28-1) which incorporates Defendants' Statement of Facts and Conclusions of Law in Support of Defendants' Motion for Summary Judgment (Doc. 21-2) and Plaintiff's Statement of Genuine Issues of Facts in Opposition to Defendants' Motion for Summary Judgment. (Doc. 26-1.) Defendants' proposed uncontroverted facts are numbered 1 to 75 while Plaintiff's proposed issues of fact are numbered 76 to 124. All evidentiary citations in DRSUF are to the Administrative Record (SCE000001 – SCE000563), unless otherwise noted.

2

SERSP and interpreted its terms. (*See id.* ¶ 3.) SERSP was made available in accordance with the terms of the Plan and the severance benefits provided by SERSP were the same as those offered under the Plan. (*See id.* ¶¶ 4-5.) SCE appointed an internal Committee, made up of SCE employees, to administer the Plan at its sole discretion. (*See id.* ¶¶ 10-11.)

SCE, not the Committee, had the sole discretion whether to accept any employee's application to participate in the SERSP. (*See id.* ¶¶ 14, 26.) To be eligible for benefits under the Plan through the SERSP, an individual had to be a SONGS employee at the time the SERSP was announced on September 24, 2012. (*See id.* ¶ 12.) In addition, an employee had to have been terminated from employment while the Plan was in effect. (*See id.* ¶ 20.) Employees also had to apply to participate in the SERSP within the application period of September 27, 2012 to October 12, 2012. (*See id.* ¶¶ 13, 40.)

Another requirement for eligibility was that an employee had to be designated as "Surplus" by the Participating Employer, here SCE. (*See id.* ¶ 19.) To be designated as "Surplus," an employee must have been selected for termination by his Participating Employer as part of, *inter alia*, a reduction in force. (*See id.* ¶ 21.) Furthermore, the Plan allowed for the establishment of a "Window Program" where employees could apply for benefits conditioned on the employee's voluntary termination of employment by being designated as Surplus. (*See id.* ¶ 22.) SCE retained the sole discretion to designate any employee as Surplus and to determine any employee's eligibility to apply for benefits under the Window Program. (*See id.* ¶¶ 23, 27.) Under the SERSP, employees who already announced their intended retirement date before the

SERSP was announced on September 24, 2012, were ineligible to participate in the SERSP. (*See id.* ¶ 16.)

On August 20, 2012, SCE announced by email, and by posting on the internal SONGS portal, that it would be implementing a reduction-in-force in which approximately 730 SONGS employees would be laid off. (*See id.* ¶¶ 35, 84.) Plaintiff subsequently attended an All-Hands-Meeting where SCE management announced that it would not be offering a severance package to those terminated employees. (*See id.* ¶ 85.) On September 4, 2012, when Plaintiff was off-site on unpaid leave, SCE announced that it was considering whether to offer a voluntary severance program. (*See id.* ¶¶ 94-95.) On September 24, 2012, SCE announced to all employees that it would indeed be offering a voluntary severance program. (*See id.* ¶ 99.) SCE pays the full cost of Plan benefits from operating income. (*See id.* ¶ 73.)

### B. Plaintiff's Retirement

SCE utilizes a Benefits Commencement Package ("BCP") in which employees log on to the EIX Benefits Website and check a box to receive a retirement pension package. (*See id.* ¶¶ 30, 76.) Employees can withdraw notice of retirement at any time prior to receiving benefits, without penalty, by logging into the BCP and un-checking the box. (*See id.* ¶ 78.) Under SCE guidelines, an employee's request to receive pension benefits will be revoked automatically unless the employee contacts the Employee Information Center ("EIC") and gives formal notice of retirement. (*See id.* ¶ 79.)

On July 18, 2012, Plaintiff logged into the BCP, checked the box, and indicated a benefits commencement date of October 1, 2012. (*See id.* ¶ 77.) On July 30, 2012, Plaintiff contacted the EIC and formally requested October

4

1, 2012 as his benefits commencement date and September 30, 2012 as his last day of work. (*See id.* ¶ 83.) On or about September 2, 2012, Plaintiff contacted the EIC to change the last day of his employment from September 30, 2012 to September 4, 2012. (*See id.* ¶¶ 36-37, 90.) Plaintiff could have rescinded his retirement election on September 4, 2012, but he chose not to do so. (*See id.* ¶ 38.)

### C. Denial of Benefits

The Plan confers discretionary authority on the Committee to determine eligibility for Plan benefits in accordance with the terms of the Plan. (*See id.* ¶ 72.) The Committee has delegated day-to-day administrative responsibilities, such as deciding claims at the initial level, to the Benefits Strategy and Operations segment of the SCE Human Resources Department ("HR Operations"). (*See id.* ¶ 29.) The Committee, however, reviews claims for benefits that are denied in whole or in part. (*See id.* ¶ 28.)

Between September 2012 and January 2013, Plaintiff repeatedly requested to be included in the SERSP. (*See id.* ¶¶ 41, 102.) On March 11, 2013, Plaintiff's initial requests for SERSP benefits were denied in a letter from the EIC Supervisor. (*See id.* ¶ 42.) That letter explained that Plaintiff was denied participation in the SERSP because: (1) he was not a full-time employee and was not designated as Surplus by SCE; and (2) he did not meet the definition of Surplus as defined in the Plan. (*See id.* ¶ 43.)

### D. Plaintiff's Appeal

On May 8, 2013, through counsel, Plaintiff appealed the denial of Plan benefits to the Committee. (*See id.* ¶ 45.) In a letter dated May 8, 2013 to the Committee (the "Appeal Letter"), Plaintiff argued that SCE management had asked him to accelerate his retirement date and use his accrued vacation

time for SCE's benefit. (*See id.* ¶¶ 106, 121-122, 124.) Plaintiff also argued that he relied on SCE's affirmative representations that it would not be offering a severance program when he moved up his retirement date. (*See id.* ¶ 107.) According to Plaintiff, SCE treated other employees more favorably than him by accepting them into the SERSP after they gave notice or otherwise announced their intention to retire. (*See id.* ¶ 112.) After holding a meeting on June 27, 2013, (*see* SCE 000154), the Committee denied Plaintiff's appeal in a four-page letter to his attorney, dated July 17, 2013 (the "Denial Letter"). (*See* SCE000001-SCE000004.)

## II. LEGAL STANDARDS

### A. ERISA Standard of Review

The beneficiary of an ERISA plan may bring a civil action against a plan administrator "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Thus, Plaintiff has standing as a plan beneficiary to bring this action to recover severance benefits under the Plan. The scope of judicial review of an ERISA benefits decision depends on whether the plan confers discretion to the plan administrator in determining benefits. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008). The Court reviews a denial of benefits *de novo*, unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

Discretionary authority is unambiguously granted where a plan administrator has both the responsibility to interpret the terms of a plan and

determine eligibility for benefits. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006) ("By giving the plan administrator 'full and final' authority, and vesting such authority 'exclusively' in the administrator, this policy clearly gave to the plan administrator the power to decide according to its own judgment."). Thus, "[w]here an ERISA plan vests the administrator with discretionary authority to determine benefit eligibility, 'a district court may review the administrator's determinations only for an abuse of discretion.'" *Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 552 (9th Cir. 1995) (quoting *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1471 (9th Cir. 1993) (citing *Firestone*, 489 U.S. at 115)).

The Ninth Circuit has held that an "ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005). "Under this deferential standard, a plan administrator's decision 'will not be disturbed if reasonable.'" *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012) (quoting *Conkright v. Frommert*, 559 U.S. 506, 521 (2010) (internal quotation marks omitted)). "This reasonableness standard requires deference to the administrator's benefits decision unless it is (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (quotation marks and citation omitted).

"A conflict of interest commonly arises when . . . a plan administrator serves a dual role of both determining employee eligibility for benefits and

7

paying those benefits out of its own pocket." *Winz-Byone v. Metropolitan Life Ins. Co.*, 357 Fed. App'x 949, 951 (9th Cir. 2009). *See also Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 630 (9th Cir. 2009) (stating that a plan administrator faces a structural conflict of interest if it both funds a benefits plan and also evaluates claims). The Ninth Circuit has held that

> an [administrator] that acts as both the plan administrator and the funding source for benefits operates under what may be termed a structural conflict of interest. *See Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 976 (9th Cir. 1999) (noting that a conflict of interest exists when an insurer both administers and funds an ERISA plan). . . . As the Supreme Court indicated in *Firestone*, such an inherent conflict of interest, even if merely formal and unaccompanied by indicia of bad faith or self-dealing, ought to have some effect on judicial review. The question is, what effect?

*Abatie*, 458 F.3d at 965-66.

In *Metropolitan Life Insurance Co. v. Glenn*, the Supreme Court explained that a conflict of interest "should be weighed as a *'factor* in determining whether there has been an abuse of discretion.'" *See* 554 U.S. at 115 (quoting *Firestone*, 489 U.S. at 115) (internal quotation marks and citation omitted, emphasis added). Accordingly, the district court must take the conflict of interest into account when determining whether the plan administrator abused its discretion and must "temper the abuse of discretion standard with skepticism 'commensurate' with the conflict." *Nolan v. Heald Coll.*, 551 F.3d 1148, 1153 (9th Cir. 2009) (quoting *Abatie*, 458 F.3d at 959). In other words, "[a] district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage. An egregious

8

conflict may weigh more heavily (that is, may cause the court to find an abuse of discretion more readily) than a minor, technical conflict might." *Abatie*, 458 F.3d at 968. Regarding the required level of skepticism resulting from a conflict of interest, the Ninth Circuit has stated:

> The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history.

*Id.* (citations omitted). Thus, a court may weigh a conflict more heavily "if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claimant's reliable evidence, or had repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record." *Burke v. Pitney Bowes Inc. Long term Disability Plan*, 640 F. Supp. 2d 1160, 1169-70 (N.D. Cal. 2009) (citing *Abatie*, 458 F.3d at 968-69). Where there is a structural conflict of interest, the standard of review has been referred to as "the informed abuse of discretion standard." *Winz-Byone*, 357 Fed. App'x at 951.

**B.      Summary Judgment**

Traditional rules of summary judgment require that summary judgment be denied if, in viewing the evidence in the light most favorable to the non-moving party, there are genuine issues of material fact. *See Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1079-80 (9th Cir. 2004) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

9

and that the moving party is entitled to a judgment as a matter of law.'" (quoting Fed. R. Civ. P. 56(c)).  However, the Ninth Circuit has held that "where the abuse of discretion standard applies in an ERISA benefits denial case, 'a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests for summary judgment, such as whether a genuine dispute of material fact exists, do not apply.'"  *Nolan*, 551 F.3d at 1154 (quoting *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).  Thus, "a district court must apply the traditional rules of summary judgment when examining evidence outside of the administrative record in an ERISA case[.]"  *Id.* at 1150.

## III.   DISCUSSION

### A.   The Conflict of Interest is Minor

Plaintiff argues that the Committee operated under a conflict of interest because its members were appointed by SCE, the Plan sponsor responsible for the payment of claims.  The Committee is a fiduciary separate and apart from SCE, the Plan sponsor, which is not a fiduciary.  *See CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1877 (2011); *Lockheed Corp. v. Spink*, 517 U.S. 882, 890-91 (1996).  Moreover, ERISA expressly allows employees of a plan sponsor to serve as plan administrators.  *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1093 (9th Cir. 2004) (stating that "the authority to administer the plan must be vested in one or more named fiduciaries. . . [who] need not be an independent party; the employer or plan sponsor may appoint its own 'officer, employee, agent, or other representative' to serve in a fiduciary capacity." (quoting 29 U.S.C. § 1108(c)(3) (stating that ERISA does not prohibit a person from "serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest")).

10

Where members of a plan administrator are employees of a large corporation, the conflict of interest is minor if the effect of the disputed claim on the company's operating results is immaterial. *See, e.g., Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 981 (7th Cir. 1999) ("When the administrator is a large corporation, the firm has a financial interest, but the award in any one case will have only a trivial effect on its operating results."). Here, SCE had operating revenue of $12.56 billion in 2013. (DRSUF ¶ 67.) Plaintiff's claim is for 52 weeks of salary ($113,237.28) and other ancillary benefits ($16,633.68). (*See id.* ¶¶ 69-71.) Thus, Plaintiff's claim for $129,870.96 in severance benefits could not have seriously impacted SCE's bottom line. *See Wakamatsu v. W. Oliver*, 570 Fed. App'x 708, 708 (9th Cir. 2014) (applying abuse of discretion standard "with only slight additional skepticism" where conflict had a small financial impact). Because the structural conflict in this case is minor, this Court employs only a low-level of additional skepticism in applying the abuse of discretion standard.

### B.     The Committee Adequately Investigated Plaintiff's Allegations

Plaintiff argues that the Committee did not adequately investigate his claim because it delegated the responsibility for making initial claim determinations to HR Operations, which also assisted the Committee in processing Plaintiff's appeal. (*See* Opp. at 8-10.) Plaintiff also argues that documents pertaining to his September 2, 2012 call to the EIC, which was closed that day, should have been included in the Administrative Record, which he describes as "incomplete." (*Id.* at 7.) This latter argument can be dismissed summarily because Plaintiff does not dispute that he contacted the

11

EIC to change his last day of employment from September 30, 2014 to September 4, 2014. (*See* DRSUF ¶¶ 36-37, 90-91.)

As to the division of labor between HR Operations and the Committee, Federal Regulations provide that: "A plan fiduciary may rely on information, data, statistics or analyses furnished by persons performing ministerial functions for the plan, provided that [the plan fiduciary] has exercised prudence in the selection and retention of such persons." 29 C.F.R. § 2509.75-8, FR-11. Here, HR Operations initially denied Plaintiff's claim on March 11, 2013. (*See* SCE000046-SCE000047). Plaintiff appealed that denial to the Committee. In his Appeal Letter, Plaintiff made the following allegations:

1. SCE encouraged Plaintiff to retire on an accelerated schedule.
2. SCE encouraged Plaintiff to use up his accrued vacation time.
3. SCE intentionally withheld information about the existence of a severance program; and
4. SCE inequitably permitted similarly situated employees, Robert Burton and Anthony Krass, to rescind their retirement plans and thereby qualify for participation in the SERSP.

(*See* SCE000048-SCE000051.) Plaintiff did not submit any evidence to the Committee in support of the above allegations. The Appeal Letter contains the following Exhibits, none of which provide independent corroboration of Plaintiff's self-serving allegations: Exhibit A (7/24/12 and 7/18/12 emails from Plaintiff to his manager showing that Plaintiff initiated the idea of using his accrued vacation time); Exhibit B (9/25/12 email from John Gyorkos notifying Plaintiff of the severance program); Exhibit C (9/26/12 letter from

12

Plaintiff to Irene Petris, Human Resources, requesting that he be permitted to participate in the SERSP): Exhibit D (11/9/13 letter from Plaintiff to Irene Petris requesting same): Exhibit E (1/22/13 from Plaintiff to Edison International requesting same); Exhibit F (3/11/13 letter to Plaintiff conveying initial denial of benefits); Exhibit G (message from Ron Burton to Plaintiff explaining that he did not "click the box" on the EIX Website); and Exhibit H (letter from Plaintiff stating that he has retained an attorney). (*See* SCE000053 to SCE000071.)

To address Plaintiff's allegations and assist the Committee in processing his appeal, HR Operations prepared an Executive Summary (SCE000008-SCE000011) and a Timeline (SCE000012-SCE000013.) The Executive Summary addressed the above allegations as follows:

1. The statement that in 2012, SCE management advised Plaintiff that SCE might reduce his Total Compensation Package unless he elects to leave SCE is without support and inconsistent with communications sent directly to Plaintiff.
2. It was Plaintiff who initiated the request to use up his accrued vacation time. In a July 24, 2012 email from Plaintiff to his manager, Plaintiff states that he would "like to start using up the remainder of [his] vacation beginning August 1 thru 27th . . . . " (SCE000054). In that same email, Plaintiff asks to be kept "in the loop" as he would retract his pension if a severance program is announced. (*Id.*). In an earlier email, dated July 18, 2012, Plaintiff states: "I have 18 days & 1 Floating Holiday I'd like to use up in August (as terminal vacation) and exit the company on Sept. 4th.") *Id.*
3. To ensure equitable treatment, communications of the Business Transformation were posted to the SONGS portal,

13

and employees were told where to find information at All-Hands-Meetings and by direct email. The business need for a reduction-in-force at SONGS was communicated to all employees in August. The first communication that the Company was considering a voluntary severance program was September 4, 2012. The actual communication of that program did not occur until September 24, 2011, after Plaintiff resigned.

4. The two employees cited by Plaintiff's attorney were not similarly situated to Plaintiff. Robert Burton requested a pension commencement package from the EIX Website but never followed through with the requisite call to the EIC. Thus, his pension application was automatically cancelled. Anthony Krass did call the EIC on August 7, 2012 to confirm his retirement on November 1, 2012. However, Krass called the EIC again on September 24, 2012, minutes before the SERSP was announced, to cancel his retirement election and thereby qualify for the SERSP.

In denying Plaintiff's appeal, the Committee did not simply rubber stamp the initial denial made by HR Operations. Instead, the Committee held a meeting on June 27, 2013 to review the matter. The minutes from that meeting show that the issues regarding Plaintiff's appeal were presented to the Committee, which unanimously agreed that Plaintiff's appeal lacked merit. (*See* SCE000154.) The Committee subsequently sent Plaintiff's attorney a four-page letter detailing the reasons why Plaintiff was excluded from the SERSP. (*See* SCE000001-SCE000004). The Committee noted that Plaintiff "did not meet the eligibility provisions of the Severance Plan, either at the time the SERSP was announced or at the time of his voluntary resignation several weeks prior to the SERSP announcement." (SCE000001). The Committee then summarized the reasons for its decision:

14

> The denial of the appeal was based on the eligibility provisions of the Severance Plan as implemented through the SERSP, and Mr. Gale's facts. These allegations were, however, also examined and are inconsistent with the timeline noted above, and contrary to the following information. All actions to retire from the Company were initiated by Mr. Gale. He notified his manager via email on July 18, 2012 of his intent to retire. On the same day, he logged on to the benefits website to request a pension commencement package. He then initiated contact with the EIC on July 30, 2012 to inform the [C]ompany of his intent to retire. . . . He did not rescind that election after he and other employees were informed on August 20, 2012, that a RIF was coming. Not only did he not rescind it, he instead effectively renewed his retirement intentions, when on September 2, 2013 he took steps to accelerate his resignation, to September 4, 2012 from September 30, 2012.

(SCE000003.) The Committee further noted that: "Mr. Gale's appeal letter to the Committee on May 8, 2013 did not provide evidence that supported the allegation that he was compelled to retire early or prevented from rescinding his retirement election . . . . There was similarly no evidence presented in the May 8, 2013 appeal letter supporting the assertion that information about the voluntary severance program or the consequences of terminating were withheld from him." (SCE000004.) In sum, the Committee engaged in a meaningful dialogue with Plaintiff, adequately and independently investigated his allegations, and found them to be without merit.

### C. The Committee's Decision was not an Abuse of Discretion

"The touchstone of 'arbitrary and capricious' conduct is unreasonableness." *Clark v. Washingto Teamsters Welfare Trust*, 8 F.3d 1429, 1432 (9th Cir. 1993). "A plan administrator's findings of fact are not

15

clearly erroneous "where there is substantial evidence to support the decision, that is, where there is relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Wells v. Reliance Standard Life Ins. Co.*, 285 Fed. App'x 343, 344-45 (9th Cir. 2008) (quotation marks and citation omitted) (alteration in original).  Here, the evidence points to the single conclusion that Plaintiff was simply not eligible to participate in the SERSP for a number of reasons.

After adequately investigating Plaintiff's claim, the Committee reasonably reached the same conclusion in denying him severance benefits. Furthermore, the conflict of interest was minor and does not warrant much additional scrutiny.  Even considering it as a factor does not change the Court's conclusion. *See Karamsetty v. Wells Fargo & Co.*, 967 F. Supp. 2d 1305, 1320-21 (N.D. Cal. 2013) (granting summary judgment in a severance benefits case because the plan administrator's conclusion that the plaintiff "was not owed benefits under the Plan was not an abuse of discretion, even considering the conflict of interest in this case"), *appeal dismissed*, No. 13-16759 (9th Cir. Mar. 11, 2014).  Accordingly, Defendants' decision denying Plaintiff severance benefits under the SERSP/Plan was not an abuse of discretion.

16

## IV. CONCLUSION

For the foregoing reasons, Defendants' denial of severance benefits is hereby AFFIRMED and this case is dismissed.

**SO ORDERED:**

Dated: January 7, 2015

  JOSEPHINE L. STATON
_____
Honorable Josephine L. Staton
United States District Judge